# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JIMMY JOE JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:18-cv-00080** |
| **v.** | ) | **Judge Crenshaw / Frensley** |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Plaintiff has filed an accompanying Memorandum. Docket No.13-1 . Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14. Plaintiff has filed a Reply. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on June 29, 2017 alleging that he had been disabled since May 1, 2015, due to disc "herniation" L5-S1-S2, chronic and severe "hypothyroiditis," left and right hip injuries, "radiculopathy," right and left lower extremities, chronic left and right ankle lateral ligament sprains, left and right elbow strain, cervical strain C4 -6 disc "herniation," post traumatic stress disorder, major depressive disorder, and arthritis. *See, e.g.,* Docket No. 11, Attachment ("TR"), pp. 258-59, 274.  Plaintiff's application was denied both initially (TR 172) and upon reconsideration (TR 187).  Plaintiff subsequently requested (TR 198-199) and received (TR 104-158) a hearing.  Plaintiff's hearing was conducted on March 29, 2018 by Administrative Law Judge ("ALJ") Michelle Thompson. TR 104.  Plaintiff and vocational expert ("VE"), Rebecca Hill, appeared and testified. *Id.* Vanessa Jones, Plaintiff's wife, also testified as a witness. *Id.*

On April 18, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 87-99.  Specifically, the ALJ made the following findings of fact:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.  The claimant has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: cervical and lumbar degenerative disc disease; hypothyroidism; degenerative joint disease of the left hand; and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1425 and 404.1526).

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that is limited to lifting ten pounds, occasionally up to twenty pounds; sitting for a total of six hours in an eight-hour workday; standing and/or walking for a total of six hours in an eight hour workday; frequent use of his non-dominant left arm and hand for pushing and pulling and for fine and gross manipulation; understanding, performing, and maintaining concentration, persistence, and pace for simple instructions and tasks; occasionally interacting with coworkers and supervisors but not working with the general public; working around moderate noise only; and adapting to infrequent changes in the workplace.

6.	 The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.	The claimant was born on August 29, 1977, and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.	The claimant has at least a high school education and is able to communicate in English ( 20 CFR 404.1564).

9.	Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy

that the claimant can perform (20 CFR 404.1569 and
404.1569(a)).

11.    The claimant has not been under a disability, as defined in
the Social Security Act, from May 1, 2017, through the date
of this decision (20 CFR 404.1520 (g)).

TR 89-99.

On June 15, 2018, Plaintiff timely filed a request for review of the hearing decision.  TR

252.  On August 3, 2018, the Appeals Council issued a letter declining to review the case (TR 1-

5), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This civil

action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have summarized and discussed the medical and testimonial

evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary

to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process.  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369

(6th Cir. 1991).  The purpose of this review is to determine: (1) whether substantial evidence

exists in the record to support the Commissioner's decision, and (2) whether any legal errors

were committed in the process of reaching that decision.  *Landsaw v. Sec'y of Health & Human

Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2).  *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985).  Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) did not properly evaluate the opinion of Dr. Herr, Plaintiff's treating psychologist; (2) substituted her own medical opinion for that of Dr. Herr; and (3) improperly relied on the testimony of the VE when making her determination at step five of the sequential evaluation process because the ALJ's hypothetical questions to the VE did not accurately portray Plaintiff's mental impairments. Docket No. 13-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1.  Weight Accorded to Opinion of Plaintiff's Treating Physician**

Plaintiff maintains that the ALJ improperly disregarded the opinion of his treating psychologist, Douglas R. Herr, Psy.D.  Docket No. 13-1. Specifically, Plaintiff argues that the ALJ should have given great weight to Dr. Herr's opinion because he is a specialist, his opinion is consistent with other evidence in the record, and as Plaintiff's treating psychologist, he has treated Plaintiff "long enough and frequently enough" to form a well-considered opinion.  *Id.* Plaintiff further maintains that the ALJ's rationale for discounting Dr. Herr's opinion, namely, that it was "largely based on reports from the claimant and his wife, and no supporting treatment records were provided" (TR 90) is erroneous because "psychological examination and treatment by its very nature involves the solicitation of and reliance upon the symptom report of a patient and available witnesses," because Dr. Herr's opinion was based in part on his observations during sessions, and because "the ALJ made no attempt to obtain treatment records from Dr. Herr nor even gave any indication prior to her decision that such records were needed, and Tennessee law expressly provides that a treatment provider may give a summary of treatment rather than the treatment records themselves, see TCA §63-2-101." *Id.* at 15, 17.

Plaintiff additionally argues that Dr. Herr's opinion is consistent with Plaintiff's earning records and with VA records, and notes that there are no psychological treatment records to speak of between when Plaintiff left the military on May 1, 2017 and when he began seeing Dr. Herr, to which Dr. Herr's opinion could be in conflict. *Id.* at 15-17.  Plaintiff argues that the ALJ's contention that Dr. Herr's opinion is inconsistent with the VA psychological treatment

records "is inexplicable, especially given the worsening of [Plaintiff's] PTSD and the fact that Dr. Herr is the only medical source who even saw [Plaintiff] in 2018." *Id.* at 17.

Finally, Plaintiff argues that the "unremarkable cognition score" referenced by the ALJ is inapposite to a determination regarding the severity of Plaintiff's PTSD because it is an 11-question test that screens for gross cognitive impairment only and Dr. Herr opined that Plaintiff's "cognition is likely grossly intact." *Id.* at 18. Thus, Plaintiff argues that his "unremarkable cognition score" establishes only that he is not suffering from dementia, but has "little to nothing" to do with the nature and severity of his PTSD. *Id.*

Defendant responds that the ALJ properly considered the report from Dr. Herr and found it unpersuasive because it was "not consistent" with the record, and notes that the ALJ "cited substantial evidence to support this finding." Docket No. 14. Defendant argues that the cases cited by the Plaintiff are based on application of the old regulation, CFR § 404.1527 and are "inapplicable to a case decided under the new regulations." *Id.* Defendant asserts that the ALJ summarized and considered Dr. Herr's opinion but found that it was inconsistent with, *inter alia*, Plaintiff's earnings and largely unremarkable treatment record, the fact that Plaintiff had worked for 11 years after the traumatic events he described and his largely unremarkable interim records, the fact that Dr. Herr had only been treating Plaintiff only since the month prior to his rendered opinion, and there were no supporting treatment records from Dr. Herr to accompany his opinion. *Id.* at 5. Defendant argues therefore that the ALJ fulfilled her duty under the new regulations applicable to this claim. *Id.* at 4-8, *referencing* 20 CFR §§ 404.1520c, 416.920c.

Defendant additionally responds that the ALJ is specifically permitted to consider the lack of treatment records or other support in the record, and that, with regard to the VA disability

findings themselves, under the new regulations, the SSA will not analyze another agency's

decision as that agency reaches its decision using its own rules, but the SSA will consider the

decision's supporting evidence. *Id.* at 9, *referencing* 82 Fed. Reg. 5844, 5848-49, 20 CFR §§

404.1504, 416.904, 404.1520c, 416.920c. Defendant argues that the ALJ properly considered the

lack of treatment records and support in the record, and properly considered Plaintiff's VA

records such that the ALJ's decision not to accord great weight to Dr. Herr's opinion was

supported by substantial evidence. *Id.*

Plaintiff replies that Dr. Herr's assessment is well supported in the VA records. Docket

No. 15. Specifically, Plaintiff contends that the "C & P examination note of Max L. Gunther,

PhD strongly supports Dr. Herr's assessment." *Id., referencing* TR 696-701. Plaintiff contends

that the ALJ violated 20 CFR § 404.900(b) "in failing to either advise Mr. Jones to obtain

treatment records from Dr. Herr or obtain same herself before weighing the lack of such records

against Mr. Jones." *Id.*

With regard to the evaluation of medical opinions and prior administrative medical

findings for claims filed on or after March 27, 2017, the new Regulations provide as follows:

> **(a) How we consider medical opinions and prior
> administrative medical findings.** We will not defer or give any
> specific evidentiary weight, including controlling weight, to any
> medical opinion(s) or prior administrative finding(s), including
> those from a your medical sources. When a medical source
> provides one or more medical opinions or prior administrative
> medical findings, we will consider those medical opinions or prior
> administrative medical findings from that medical source together
> using the factors listed in paragraphs (c)(1) through (c)(5) of this
> section, as appropriate. The most important factors we consider
> when we evaluate the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph(c)(1) of this section) and consistency (paragraph (c)(2) of this section). . . .

**(b)  How we articulate our consideration of medical opinions and prior administrative medical findings.**  We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.  Our articulation requirements are as follows:

> **(1) Source-level articulation.**  Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.  Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

> **(2) Most important factors.**  The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.  Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

**(1) Supportability.** The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

**(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(ii) Frequency of examinations.** The frequency of your visits with the medical source may help

demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(iii) Purpose of the treatment relationship.**  The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(iv) Extent of the treatment relationship.**  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(v) Examining relationship.**  A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.**  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.**  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.

20 CFR § 404.1520c.

Dr. Herr began treating Plaintiff on February 2, 2018. TR 1523. On March 23, 2018, Dr.

Herr provided a treating source statement letter regarding Plaintiff which stated as follows:

> I'm a clinical psychologist licensed in Tennessee and began working with Mr. James (Jimmy) Jones on February 2nd, 2018. Mr. Jones is continuing in treatment to address chronic, severe symptoms of mental illness that significantly impair his ability to function. The following diagnostics are based on my assessment of Mr. Jones during 5 one-hour and 2 two-hour sessions. The primary focus of these sessions has been treatment, and Mr. Jones has actively cooperated and participated in his treatment.
>
> Mr. Jones tolerated scored [*sic*] 29/30 on a Folstein Mini-Mental Status Exam indicating that his cognition is likely grossly intact and supporting the hypothesis that Mr. Jones was not malingering. Mr. Jones did not tolerate structured interviewing well due to the severity of his distress. The following assessment is based on information gathered from Mr. Jones and his wife, Vanessa Jones, during the course of his treatment, which is in its early stages.
>
> In the course of his military service, Mr. Jones was a Blackhawk Helicopter pilot and saw long periods of active combat. He was repeatedly exposed to traumatic material directly and indirectly during tours of duty adding up to 4 years. He did not decompensate to his current condition until leaving the military, though he had begun to experience distress while still on active duty and at the time of his retirement.
>
> Mr. Jones currently suffers from a variety of symptoms which I either observed or that were reported by him or his wife. His current diagnostics are as follows:
>
>> F43.12 Post Traumatic Stress Disorder, Chronic, Delayed Expression

## F31.64 Bipolar I, Current Episode Mixed, Severe with Psychotic Features, Rule Out

Mr. Jones is generally able to maintain activities of daily living. For example, he is able to bathe, dress himself, eat and care for his basic needs. However, he is not able to look after himself administratively, so his wife has power of attorney. In order to reduce daily stimulation, which helps to manage his symptoms, the [sic] moved from their suburban home to a rural area. Mr. Jones is not able to sustain attention on the task of driving without becoming exhausted. He has to stay in the right lane and avoids heavy traffic. His ability to drive to appointments is limited so he sometimes pulls off to the side of the road and sleeps on his way home from sessions. This is in marked contrast to his previous capacities, when he was able to fly a military helicopter using all four limbs while tracking 5 channels on a radio and planning his mission's next step.

Mr. Jones has severe symptoms that are difficult to categorize with complete confidence. His anxiety may be so high that he does not sleep for days during which time he is tense and agitated with flashbacks. However, his "flashbacks" may also at times be psychotic features occurring in the course of mixed manic episodes, after which he collapses into sleep when the episode passes. It is clear that he has flashbacks and nightmares indicative of severe and chronic PTSD, however, his symptoms may also include a mood instability with mania or hypomania, concurrent depression, rapid cycling and psychotic features.

Mr. Jones daily rhythms are erratic, his sleep is unpredictable, his attentional capacity is severely compromised, his tolerance for relationships is severely limited as is his capacity for adaptive behavior. He has regular and frequent panic attacks and crying episodes. His speech can be pressured, and he experiences psychomotor agitation (shaky hands). He avoids reminders of his trauma triggers and tries to use simply daily chores to regulate his mood, energy and state of mind. He is unable to work a full week, be around coworkers or the public, or maintain a full or even half-day consistently without significant accommodations. I do not believe that Mr. Jones will make a full recovery, and I anticipate that stabilization may take three to five years, based on my prior experience in working with individuals with trauma comparable to Mr. Jones. He will likely benefit from supportive therapy for the rest of his life.

TR 1523-1524.

When discussing Dr. Herr's letter, the ALJ stated:

> A letter from psychologist Dr. Douglas R. Herr shows that the claimant started undergoing treatment with Dr. Herr on February 2, 2018. Dr. Herr reported that he assessed the claimant and diagnosed him with chronic PTSD with delayed expression. He also assessed a "rule out" diagnosis of type one bipolar disorder, severe with psychotic features. He noted that the claimant obtained a score of twenty-nine out of thirty on the Folstein Mini-Mental Status Exam and that this indicated grossly intact cognition. However, Dr. Herr reported that the claimant did not tolerate structured interviewing well due to the severity of his distress. Dr. Herr also obtained information from the claimant and his wife. Based on this information, he noted that the claimant had seen long periods of active combat and had been repeatedly exposed to traumatic events directly and indirectly during tours of duty adding up to four years. He further noted that the claimant was generally able to maintain his daily living but not able to look after himself administratively and had therefore given power of attorney to his wife. Dr. Herr reported that the claimant had moved from a suburban area to a rural area in order to lessen his daily stimulation and help him manage his symptoms. It was noted that he could not sustain his attention while driving without becoming exhausted and that he had such high anxiety sometimes that he did not sleep for days, flashbacks that at times had psychotic features, and regular and frequent panic attacks and crying episodes. Based on this information, Dr. Herr opined that the claimant had severely compromised attention and severely limited tolerance for relationships and that he could not work a full work-week, be around coworkers or the public, or maintain a full or even a half day of work consistently without significant accommodations. Exhibit 13F.

TR 95-96.

Ultimately, the ALJ discounted Dr. Herr's opinion, stating:

> The undersigned finds Dr. Herr's letter at Exhibit 13F to be persuasive inasmuch as it shows that the claimant has been greatly

affected by his experiences in the Military. However, the remainder of his assessment is not persuasive as it is not consistent with other evidence, including the claimant's earnings record and his largely unremarkable treatment records. Further, Dr. Herr's assessment is not supported by the objective medical evidence included in his letter, which was an unremarkable cognition score. His assessment was otherwise based on reports from the claimant and his wife. The evidence as a whole does not show that the claimant has been affected to the point where he is unable to perform unskilled work within the above residual functional capacity. The claimant provided evidence as to his past traumatic events at Exhibits 11E and 9F, but the evidence only documents events from 2005, and the claimant performed substantial gainful activity for about 11 years after that. Further, the treatment records from the period in question are largely unremarkable except as to the claimant's reported complaints and abnormal mood findings. The undersigned also finds that Dr. Herr's assessment is not persuasive given his brief length of treatment with the claimant. The claimant has only been getting treatment from Dr. Herr since February 2018, and Dr. Herr acknowledged that his information was gathered from the claimant and his wife "during the course of his treatment which [was] in its early stages." Dr. Herr also noted that the claimant would "likely benefit from supportive therapy for the rest of his life." However, this does not mean that the claimant is unable to do unskilled work. Finally, no treatment records from Dr. Herr were provided to support his assessment.

TR 97, *citing* TR 1523-1524.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source.  20 CFR § 404.1520c(a).  In discounting Dr. Herr's opinion, the ALJ discussed the relevant factors, set forth above.  *See* 20 CFR § 404.1520c(c)(1) - (c)(5).  Specifically, the ALJ found that Dr. Herr's opinion was not supported by his treatment records or the objective medical evidence, and was inconsistent with Plaintiff's earning record and the "largely unremarkable treatment records."  TR 97.  The ALJ explained:

As for the claimant's mental impairment, the undersigned notes that he provided reports from traumatic incidents that he experienced while in the military. However, these reported

incidents occurred in 2005. Exhibits 11E and 9F. The claimant was able to work for several years afterwards and his certified earnings records at Exhibit 8D reflect earnings well above the level of substantial gainful activity through 2016. So the Plaintiff was able to work well above the level of substantial gainful activity through 2016. On October 25, 2016, he was diagnosed with adjustment disorder and anxiety, and it was subsequently determined that he met the criteria for a diagnosis of PTSD. Exhibit 3F. The undersigned notes that the letter dated January 17, 2017, from the claimant's therapist requests that the claimant be allowed to fly on military aircraft with his emotional support animal due to "severe emotional distress when flying. Exhibit 2F.

After the alleged onset date, a compensation and pension examination was performed on May 25, 2017, and it was determined that the claimant's PTSD had caused occupational and social impairment with reduced reliability and productivity. On June 30, 2017, the claimant underwent a psychological evaluation where assessments indicated PTSD and moderately severe depression. The claimant reported that he tried to live as healthy as possible by exercising, which indicates that he was not as physically limited as alleged. However, he complained of distress associated with reactions to reminders of past combat experiences. Despite his complaints, the claimant had an unremarkable mental status examination although it was noted that he was "somewhat anxious and dysphoric." He was diagnosed with PTSD and assessed a "rule out" diagnosis of major depressive disorder. Exhibit 6F.

On the same day, the claimant underwent a post-deployment transition evaluation. It was noted that he had ongoing issues with chronic PTSD with occasional flare-ups of anhedonia and dysphoria, moods wings, irritability and anger. It was also noted that the claimant had a history of closed head trauma with loss of consciousness and that he wanted to be assessed for traumatic brain injury. Of note, the claimant reported that he wanted to attend school to get a degree in military history and that he had published a number of articles on the history of the Civil War. Exhibit 6F. It is unclear when this was done, and there is no evidence that the claimant ever enrolled in school. However, on July 17, 2017, the claimant had an unremarkable traumatic brain injury evaluation.

He exhibited appropriate affect, accurately performed serial sevens, and demonstrated intact abstract reasoning. He did not show any unusual posture or mannerisms or evidence of hostile, evasive or paranoid behavior. It was determined that he did not have a history of traumatic brain injury. Further, the claimant reported that he was doing well, and he denied needing any services.

. . .

No further mental health treatment records were provided.

TR 95-96, *citing,* TR 271, 333-340, 382-543, 559-943, 1263-1279,

Beyond discussing supportability and consistency, ALJ also considered Dr. Herr's "relationship with the claimant." 20 CFR § 404.1520c(c)(3). The ALJ noted that at the time of his March 23, 2018 letter, Dr. Herr only been treating Plaintiff since February of 2018. TR 97. The ALJ also recounted the extent, purpose, and examining nature of the treating relationship. *See* TR 95-97. The ALJ fulfilled her duty under the new regulation and properly evaluated the opinion of Dr. Herr.[2]

---

[2] Plaintiff also argues that "Tennessee law" states that "a treatment provider may give a summary of treatment rather than the treatment records themselves," and that because the ALJ did not request treatment records from Dr. Herr, the ALJ violated 20 CFR § 404.900(b). Docket No. 13-1.
20 CFR § 404.900(b) provides:

Nature of the administrative review process. In making a determination or decision in your case, we conduct the administrative review process in an informal, non-adversarial manner. Subject to certain timeframes at the hearing level (see § 404.935) and the limitations on Appeals Council consideration of additional evidence (see § 404.970), we will consider at each step of the review process any information you present as well as all the information in our records. You may present the information yourself or have someone represent you, including an attorney. If you are dissatisfied with our decision in the review process, but do not take the next step within the stated time period, you will lose your right to further administrative review and your right to judicial review, unless you can show us that there was good cause for your

Regarding Plaintiff's assertion that Dr. Herr's opinion is consistent with his VA records, while the ALJ need not analyze the decision of another government agency, the ALJ will, however, consider all supporting evidence underlying the decision made by the governmental agency. 20 CFR § 404.1504. The ALJ in the case at bar addressed the overall findings of the VA medical records and stated:

> Treatment records reflect largely unremarkable mental status examinations except for some abnormal mood findings, but they show that the claimant reported having some issues with irritability, anger, mood swings, and impaired concentration and memory.

TR 90, *citing* TR 599-943, 944-1246.

As demonstrated, the ALJ considered the hospital records from the VA and explained that she found the medical records unpersuasive because they reflected largely unremarkable mental status examinations. Additionally, as demonstrated by the ALJ in her evaluation of the evidence, Plaintiff's VA records were inconsistent with other evidence of record. While the ALJ must consider all of the evidence, ultimately, it is the province of the ALJ to determine which limitations are consistent with, and supported by, the record as a whole. The ALJ in the instant action properly evaluated the evidence; the ALJ's decision, therefore, must stand.

_____

failure to make a timely request for review.

As can be seen, 20 CFR § 404.900(b) does not require an ALJ to request treatment records from a physician.

## 2.  Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ substituted her own medical judgment for that of Dr. Herr. Docket No. 13-1. Specifically, Plaintiff argues that, although the ALJ correctly accorded little or no weight to the assessments of the non-examining DDS consultants and correctly found the "compensation and pension report at Exhibit 6F to be somewhat persuasive as it shows that the claimant's PTSD has resulted in occupational and social impairment with reduced reliability and productivity," the ALJ did not include any limitations regarding "reduced reliability and productivity" in her RFC finding.  *Id.* at 19, *quoting* TR 97.  Plaintiff additionally argues that the ALJ failed to address the worsening of Plaintiff's PTSD over time,  failed to acknowledge that Dr. Herr's opinion was "completely consistent with all of the other evidence from 2018," and improperly analyzed Plaintiff's PTSD as if it had not changed in nature or severity from the time he was still in the Army. *Id.* at 19-20.  Plaintiff contends, therefore, that the ALJ improperly rejected Dr. Herr's assessment and "arbitrarily substituted her own judgment for competent medical opinion."  *Id.* at 20.

Defendant responds that Plaintiff's argument misunderstands the ALJ's obligation in terms of the residual functional capacity finding, as the ALJ need not rely on any particular medical opinion when evaluating the evidence used to formulate the residual functional capacity finding because the ALJ's residual functional capacity determination is based on the evaluation of all relevant evidence.  Docket No. 14, p. 10.  Defendant further responds that the ALJ's residual functional capacity does not need to correspond to a physician's opinion because she has the final authority to make determinations or decisions on disability.  *Id.*, *citing Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015).  Defendant maintains that the ALJ's

RFC finding properly included the limitations the ALJ found consistent with the record as a whole. *Id.* at 11, *citing Poe v. Comm'r of Soc. Sec.*, 342 F. App's 149, 155-56 (6th Cir. 2009).

With regard to Plaintiff's argument that the ALJ substituted her own medical judgment in place of Dr. Herr, Defendant responds that the ALJ properly evaluated the medical evidence and reached a legal determination that was supported by substantial evidence. *Id.* Addressing Plaintiff's argument that the ALJ should not have given diminished weight to Dr. Herr's opinion concerning delayed PTSD, Defendant responds that "the ALJ's comment is reasonable given that there were no actual treatment records other than Dr. Herr's statement to validate this complaint." *Id.* Defendant notes that, if the "frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," the ALJ may find this to be "inconsistent with the overall evidence of record." *Id., citing* SSR 16-3p. Defendant asserts, "The lack of supporting evidence to meet Plaintiff's burden to prove disability does not amount to an impermissible substitution of opinion by the ALJ. It is Plaintiff's burden to show disability and he did not meet that burden." *Id.* at 11-12, *citing Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 425 (6th Cir. 2013).

In his Reply, Plaintiff generally reiterates his contentions that the ALJ has engaged in speculation, improperly evaluated and weighed the evidence, and played doctor. Docket No. 15. Plaintiff argues that he experienced horrific trauma that is "uncontradicted in the record." *Id.* at 5. Plaintiff further argues that the ALJ is not a psychologist and therefore not in a position to dismiss the claims made by Dr. Herr. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1576(b) that is limited to lifting ten pounds, occasionally up to twenty pounds; sitting for a total six hours in an eight hour workday; standing and/or walking for a total of six hours in an eight-hour workday; frequent use of his non-dominant left arm and hand for pushing and pulling and for fine and gross manipulation; understanding, performing, and maintaining concentration, persistence, and pace for simple instructions and tasks; occasionally interacting with coworkers and supervisors but not working with the general public; working around moderate noise only; and adapting to infrequent changes in the workplace.

TR 91.

In making this determination, the ALJ discussed the medical and testimonial evidence of record. TR 89-99. While Plaintiff argues that the ALJ substituted her own medical judgment for that of Dr. Herr's, as has been discussed in the statement of error above, the ALJ properly evaluated the evidence of record and appropriately discounted Dr. Herr's opined limitations that were inconsistent with, or unsupported by, the record.

As demonstrated by the ALJ's expressed decision rationale, the ALJ evaluated the medical and testimonial evidence of record, and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 91. Contrary to Plaintiff's assertion, the ALJ did not substitute her own medical judgment in place of Dr. Herr's; rather, the ALJ considered the medical and testimonial evidence to reach her decision as demonstrated above. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

### 3. Step Five Determination

Plaintiff argues that the ALJ's finding at step five of the sequential evaluation process was erroneous because the ALJ's hypothetical questions to the VE did not accurately portray Plaintiff's mental impairments as expressed by Dr. Herr. Docket 13-1, p. 20-21. Specifically, Plaintiff argues that the ALJ's hypothetical questions were faulty because they did not include Dr. Herr's limitations on reliability and productivity. *Id.* Plaintiff contends that the ALJ's step five determination cannot stand because the VE testified that such limitations would preclude performance of the identified jobs and absenteeism of just 1 to 2 days of work per month would

preclude all competitive employment.  *Id.*  Plaintiff maintains that the "VE's testimony in response to the ALJ's defective hypothetical questions does not constitute substantial evidence [Plaintiff] can perform a significant number of jobs."  *Id.*

Defendant responds that Plaintiff's argument on this statement of error is based solely on his prior arguments set forth in the previous statements of error.  Docket No. 14, p. 12. Defendant argues that the ALJ appropriately determined Plaintiff's residual functional capacity and posed a proper hypothetical question to the VE that incorporated the limitations the ALJ found credible, such that the ALJ could rely on the testimony of the VE that there existed in significant numbers in the national economy jobs that Plaintiff could perform.  *Id.*

While Plaintiff does not specifically address this statement of error in his Reply, Plaintiff reiterates his prior arguments to argue that the ALJ improperly evaluated and discounted the opinion of Dr. Herr and improperly substituted her medical opinion for that of Dr. Herr, such that the ALJ's RFC determination was erroneous, as were the hypothetical questions posed to the VE thereby precluding a reliance thereon, such that the ALJ's decision cannot stand.  Docket No. 15. Plaintiff asserts: "The record in this case tells one true story, that [he] is disabled."  *Id.* at 5.

As explained above, the Commissioner has the burden at step five of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity.  20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional

impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ in the instant action posed two hypothetical questions to the VE. TR 154-158. The ALJ first queried:

> Q        . . . In Hypothetical Number 1, please consider someone of Mr. Jones' education, age, education and work experience, who can lift ten pounds, occasionally up to 20, stand and/or walk for a total of six hours in an eight-hour workday, sit for a total of six hours, and this is with normal breaks. He can frequently use his nondominant left arm and hand for pushing and pulling and for gross and fine manipulation and that's at a frequent level for the left, nondominant arm. He can understand, perform and maintain concentration, persistence and pace for simple instructions and tasks. He can occasionally interact with coworkers and supervisors but cannot work with the general public. He should work around moderate noise only and can adapt to infrequent changes in the workplace. I know this hypothetical would

exclude the past work and any transferrable skills of the past work, is that correct?

A      Correct. That would be eliminated.

Q      All right. Would there be any unskilled work under this hypothetical that such a person could do?

A      Yes, your honor, I just need a moment to do a little bit of research?

Q      Sure.

A      Thank you. I've identified three possible occupations. The first title would be marker, with a DOT Number 209.587-034. The exertional level's light. This is unskilled work with an SVP of two. National numbers, there's about 250,000. The second title would be garment sorter, with a DOT Number 222.687-014. The exertional level's light. This is unskilled work with an SVP of two. National numbers, there's about 196,000. And then third title is cleaner and polisher, with a DOT Number 709.687.010. The exertional level's light. This is unskilled work with an SVP of two and national numbers, there's about 70,000.

Q      Is this a sample list, Ms. Hill?

A      Excuse me?

Q      Is this a sample or is this exhaustive?

A      Oh, this is a sample, your honor.

TR 154-155.

The ALJ then modified the hypothetical question and queried:

Q       . . . In Hypothetical Number 2, please consider that the same person has the same limitations as in Hypothetical Number 1 but due to several combinations of symptoms he cannot tolerate routine stress in the workplace. Would he be able to work at all?

A       No, your honor.

Q       Is your testimony consistent with the DOT?

A       Yes, it is.

TR 156.

Plaintiff's attorney then questioned the VE as follows:

Q       . . . To the Hypothetical Question Number 1, add that he's going to be missing at least one or two days of work per month due to, he's got a variety of conditions but insomnia and then having these crashes he's described there he'll sleep for 18 hours. That would eliminate the identified jobs and all of the jobs, would it not?

A       Yes, it would eliminate the jobs I identified and all competitive employment, sir.

Q       If he was unable to work around coworkers or the public, would that eliminate these jobs?

A       Yes.

Q       If he was not able to maintain a full or even half day of work schedule consistently without significant accommodations, would it eliminate these jobs?

A        Yes, it would.

TR 157-158.

As noted, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations.  *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).  In the instant action, the hypothetical question posed to the VE by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record.  Because the hypothetical question upon which the ALJ ultimately rendered her decision accurately represented Plaintiff's credible limitations, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779.  Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge