# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| JIMMY JOE JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-00080 |
| ) | |
| NANCY A. BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is a Social Security appeal. In response to the recommended denial of his Motion for Judgment on the Administrative Record (Doc. No. 13), Plaintiff has filed Objections (Doc. No. 23) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 16). Spanning 34-pages, those objections could just as well have served as Plaintiff's opening brief, notwithstanding Rule 72(b)'s requirement, that "a party . . . file *specific* written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(1) (emphasis added). Nevertheless, the Court has carefully reviewed those objections, and considered the record as a whole. Based upon that *de novo* review, as required by Rule 72(b)(3), the R&R will be accepted and the final decision of the Commissioner denying benefits will be affirmed.

As a preliminary matter, Plaintiff devotes almost an entire page of his Objections to arguing that "the specification of his alleged disability onset date (AOD) as 05/01/15 is nonsensical and inexplicable." (Doc. No. 23 at 2). Plaintiff does not identify precisely where in the 1599-page Administrative Record ("AR") that date appears. As it turns out, however, that date is listed in the introductory section of the R&R when the Magistrate Judge stated that

Plaintiff alleges "he ha[s] been disabled since May 1, 2015." (Doc. No. 16 at 2). Far from being inexplicable, it is explicable as a simple typographical error where 2015 was mistakenly substituted for 2017. Indeed, elsewhere in the R & R, the Magistrate Judge correctly identifies the correct onset date as being May 1, 2017. That has been Plaintiff's position from the start, the ALJ operated on the assumption that was the onset date, and the Magistrate Judge, despite the slip of a finger on the keyboard, also recognized 2017 to be the correct year. In short, this is a non-issue that really would have been better left unraised. Accordingly, the Court turns to the more pressing substantive questions presented by this appeal.

Plaintiff's primary and overriding objection is that the ALJ did not give controlling weight to treating psychologist Douglas Herr's diagnosis that Plaintiff was disabled as a result of post-traumatic stress disorder ("PTSD") and bipolar disorder. This diagnosis is in the form of a letter addressed to Plaintiff's counsel and made a part of the administrative record in this case.

In the letter, Dr. Herr states that he met Plaintiff five times for one hour, and twice for two hours between February 2, 2018, and the date of the administrative hearing on March 29, 2018. After noting Plaintiff "scored 29/30 on a Folstein Mini-Mental Status Exam indicating that his cognition is likely grossly intact and supporting the hypothesis that [Plaintiff] was not malingering," Dr. Herr based his assessment "on information gathered from [Plaintiff] and his wife, Vanessa Jones, during the course of his treatment." (AR at 1523). Although treatment was "in its early stages," Dr. Herr believed that the PTSD could be traced back to Plaintiff's military service as a combat helicopter pilot, and his failure to "decompensate . . . until leaving the military, though he had begun to experience distress while still on active duty at the time of his retirement." (Id.) Even though Dr. Herr opined that Plaintiff was "generally able to maintain

2

activities of daily living," he was "not able to look after himself administratively." (Id.). Dr. Herr further opined that Plaintiff had "severe symptoms that are difficult to categorize with complete confidence," that he might "not sleep for days," and "his attentional capacity is severely compromised." (Id. at 1524). As for employment, Dr. Herr stated that Plaintiff "is unable to work a full week, be around coworkers or the public, or maintain a full or even half-day consistently without accommodations." Id.

Plaintiff insists that the ALJ did not properly consider the record because substantial evidence supports Dr. Herr's conclusion that Plaintiff is disabled and unable to hold a job. In both his initial Motion for Judgment and in his Objection, Plaintiff details the evidence in the record lending support to that conclusion. For example, Plaintiff begins by describing his experience as a helicopter pilot in Iran and Afghanistan who was deployed four times for a total of 36 months between 2009 and 2014. Plaintiff then notes that (1) he was diagnosed as having "adjustment disorder" after he underwent "behavioral health treatment" in 2010 and 2012; (2) his mind started "slipping" while he was stationed in Hawaii, and so his wife "shadowed" him daily to insure that he did not miss appointments; (3) he was seen at the Schoefield Barracks Health Clinic in Hawaii on October 25, 2016 and diagnosed by a licensed clinical social worker ("LCSW") with "adjustment disorder with anxiety by history"; (4) he was prescribed Effexor, an anti-depressant, on November 23, 2016, as well as on December 8, 2016; (5) he reported to Dr. John Bonness on December 17, 2016 that he was experiencing PTSD, anxiety, agoraphobia, and depression, among other things; (6) he met with a LCSW and a psychiatrist in December and early January 2017; (7) on January 17, 2017, he was administered the CAPS 5 Assessment and diagnosed as having PTSD; (8) a week later, as he was "out-processing" from the military, a

3

LCSW noted that Plaintiff was still taking Effexor and confirmed the PTSD diagnosis; (9) he and his wife relocated to Tennessee on February 3, 2017, and the Alvin York VA Medical Center became his medical treatment provider; (10) Dr. Gunther, PhD, completed an "Initial PTSD Disability Benefits Questionnaire" on May 25, 2017, diagnosed PTSD, and noted that it was causing "Occupational And Social Impairment with Reduced Reliability and Productivity"; (11) on June 30, 2017, Plaintiff was seen at the VA for a "Post Deployment Transition" evaluation, at which time Dr. David McCoy continued the Effexor prescription to treat his "adjustment disorder with mixed emotional features" and "chronic PTSD"; and (12) at some point shortly after separating from the Army on April 30, 2017, Plaintiff was given a 100% disability rating by the VA, of which 50% was attributed to PTSD.

This recitation of the evidence favorable to Plaintiff could be viewed as setting forth a clear trajectory of his PTSD from being some sort of an "adjustment disorder" in 2010, to full-blown and debilitating PTSD after he left the service in 2017. At a minimum, it could be seen as "substantial evidence that support's Dr. Herr's diagnoses and assessment" as Plaintiff argues. (Doc. No. 20). But whether substantial evidence supports Dr. Herr's conclusion is really beside the point in this appeal.

Substantial evidence can support both Dr. Herr's assessment, *and* the ALJ's decision, *i.e.* they are not mutually exclusive and can co-exist. This is because "'[t]he substantial-evidence standard presupposes that there is a of choice within which the decisionmakers can go either way, without interference by the courts.'" Blakely v. Comm's of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there

4

is substantial evidence in the record that would have supported an opposite conclusion.'" Id. (quoting Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).

The critical question in this case, then, is whether substantial evidence supports the ALJ's decision, not whether substantial evidence also support's Dr. Herr's conclusion. It does when the Court considers that review of an ALJ's conclusion is "highly deferential" under the "substantial evidence" standard. Somberg on behalf of Somberg v. Utica Cmty. Sch., 908 F.3d 162, 173 (6th Cir. 2018); accord Con-Ag, Inc. v. Sec'y of Labor, 897 F.3d 693, 699 (6th Cir. 2018). As the Supreme Court recently explained in the context of a Social Security appeal:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Upon review of the record before her, the Administrative Law Judge discounted Dr. Herr's opinion. She wrote:

> The undersigned finds Dr. Herr's letter . . . to be persuasive inasmuch as it shows that the claimant has been greatly affected by his experiences in the military. However, the remainder of his assessment is not persuasive as it is not consistent with other evidence, including the claimant's earnings record and his largely unremarkable treatment records. Further, Dr. Herr's assessment is not supported

5

> by the objective medical evidence included in his letter, which was an
> unremarkable cognition score. His assessment was otherwise based on reports
> from the claimant and his wife. The evidence as a whole does not show that the
> claimant has been affected to the point where he is unable to perform unskilled
> work within the above residual functional capacity. The claimant provided
> evidence as to his past traumatic events at Exhibits 1lE and 9F, but the evidence
> only documents events from 2005, and the claimant performed substantial gainful
> activity for about eleven years after that. Further, the treatment records from the
> period in question are largely unremarkable except as to the claimant's reported
> complaints and some abnormal mood findings. The undersigned also finds that
> Dr. Herr's assessment is not persuasive given his brief length of treatment with
> the claimant. The claimant has only been getting treatment from Dr. Herr since
> February 2018, and Dr. Herr acknowledged that his information was gathered
> from the claimant and his wife "during the course of his treatment, which [was] in
> its early stages." Dr. Herr also noted that the claimant would "likely benefit from
> supportive therapy for the rest of his life." However, this does not mean that the
> claimant is unable to do unskilled work. Finally, no treatment records from Dr.
> Herr were provided to support his assessment.

(AR 97).

Because Plaintiff filed his application for benefits after March 27, 2017, his claim was not subject to the treating physician rule that required "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." Blakely, 581 F.3d at 406. "Instead, the ALJ [is required to] consider the 'persuasiveness' of all medical opinions (not only the acceptable medical source opinions) using the factors specified in the regulations." Pogany v. Berryhill, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 (D.S.D. July 3, 2019); accord Castillo v. Berryhill, No. C17-4072, 2019 WL 630292, at *5 (N.D. Iowa Feb. 14, 2019). The factors for weighing medical opinions include (1) supportability; (2) consistency; (3) relationship with the claimant, which in turn includes factors such as length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship and the existence of an examining relationship; (4) specialization and (5) "other

factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." Pogany, 2019 WL 2870135 at *27 n.7.

Contrary to Plaintiff's argument, the ALJ in this case complied with the new medical source regulations, concluded that Plaintiff's claim was not supportable or consistent with the record, and did not "cherry-pick" the evidence, or "play doctor" by substituting her lay opinion for that of an expert.

Up until Dr. Herr's letter, there was nothing to suggest that Plaintiff's PTSD had progressed to the point where he was unable to work. Quite the contrary, Plaintiff worked full time as a military officer for years after he first experienced traumatic events in combat and continued that work until he took his accrued vacation leave shortly before retiring in May 2017. In fact, his PTSD was not definitively diagnosed until mid-January. While Dr. Gunther noted in May 2017 that Plaintiff's PTSD was causing some "occupational and social impairment," along with "reduced reliability and productivity," he did not conclude that Plaintiff could not be gainfully employed, particularly with the limitations the ALJ found to be appropriate.[1] Despite

---

[1] The ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"):

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1576(b) that is limited to lifting ten pounds, occasionally up to twenty pounds; sitting for a total six hours in an eight hour workday; standing and/or walking for a total of six hours in an eight-hour workday; frequent use of his non-dominant left arm and hand for pushing and pulling and for fine and gross manipulation; understanding, performing, and maintaining concentration, persistence, and pace for simple instructions and tasks; occasionally interacting with coworkers and supervisors but not working with the general public; working around moderate noise only; and adapting to infrequent changes in the workplace.

7

Plaintiff's claim that his PTSD continued to get significantly worse after he left the military, he

concedes that after he saw Dr. McCoy for his "post deployment transition" at the end of June,

2017, he "<u>did</u> not receive pyschological evaluation or treatment" until he began to see Dr. Herr

in February 2018 (Doc. 24-1 at 17) (emphasis by Plaintiff), a little over a month before the

administrative hearing.

      Furthermore, Dr. Herr did not have Plaintiff's treatment records before him.  Instead, his

assessment was based on Plaintiff's and his wife's representations about how PTSD was

affecting Plaintiff.  This is not to suggest that Plaintiff and/or his wife exaggerated or were less

than forthcoming when they met with Dr. Herr, or that Dr. Herr was duped or misled by them.  It

is to say, however, that the ALJ had reasons to discount Dr. Herr's conclusions for the reasons

already stated, as well as the very limited time period during which Dr. Herr saw Plaintiff before

the administrative hearing.  Moreover, both Plaintiff and his wife testified at the hearing,

including testifying about how the wife had to "shadow" her husband while they were in Hawaii,

but the ALJ chose to discount their testimony based upon her review of the other evidence in the

record. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant," and those determinations are subject to deference so

long as they are "based on a consideration of the entire case record." <u>Rogers v. Comm'r of Soc.</u>

<u>Sec.</u>, 486 F.3d 234, 247 (6th Cir. 2007).  It is clear from reading the ALJ's opinion that she

considered the entire file before her in making her credibility determinations.

      The fact that the VA determined Plaintiff to be 100% disabled is not determinative, even

ignoring that agency attributed only 50% of the disability to PTSD.  "[G]overnment agencies

---

(AR at 91).

have different criteria for determining whether someone is disabled" and "[t]hus, one agency's disability determination is not binding on the SSA." Kessans v. Comm'r of Soc. Sec., 768 F. App'x 531, 535 (6th Cir. 2019). In Kessans, for example, the ALJ "at least consider[ed] the VA's disability and "explain[ed] the weight she assign[ed] to it" by noting the "VA uses different standards for making disability determinations and that the VA's records on [plaintiff] contained neither function-by-function analysis nor language describing how [plaintiff's] PTSD limits her ability to work." Id. (citing Joseph v. Comm'r of Soc. Sec., 741 F. App'x 306, 310 (6th Cir. 2018)). Similarly, in this case the ALJ acknowledged the VA's disability determination and found it "to be somewhat persuasive as it shows that the claimant's PTSD has resulted in occupational and social impairment with reduce reliability and productivity." (A.R. at 97). Nevertheless, the ALJ noted that the "assessment does not reflect function-by-function limitations" that are necessary to determine an individuals residual functional capacity. (A.R. at 97).

The ALJ did not, as Plaintiff argues, "play doctor" when she discounted Dr. Herr's opinion and determined Plaintiff's residual functional capacity. Rather, she used the VA's assessment in conjunction with an agency pyschological consultant's report in making that determination. This was not error. See, Mokbel-Aljahmi v. Comm'r of Soc. Sec., 732 F. App'x 395, 401 (6th Cir. 2018)("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 562 (6th Cir. 2014) (observing that when an ALJ "properly reviewed and weighed the reports to make a legal determination that is supported by substantial evidence," the ALJ is not "playing

9

doctor").

Finally, the last heading of Plaintiff's Objections reads: "VI. The hypothetical question upon which the ALJ ultimately rendered her decision did not accurately represent Plaintiff's credible limitations, and therefore the ALJ could not properly rely on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform." (Doc. No. 24-1 at 34). No arguments are made to support that heading, however. "In this circuit, it is well-settled that '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6th Cir. 2007) (quoting McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir.1997)).

For all of the foregoing reasons, the R&R will be accepted, Plaintiff's Motion for Judgment on the Administrative Record will be denied, and the Commissioner's decision denying benefits will be affirmed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE